# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAVANAH ILISE SMITH, | § | |
| BRANDY LEIGH WILKISON, and | § | |
| PAMELA GENE KARM, Individually | § | |
| and as Representatives of the | § | |
| ESTATE OF ALLAN KEITH SMITH, | § | |
| Deceased, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. H-06-0462 |
| v. | § | |
| | § | |
| HALLIBURTON COMPANY, KELLOGG, | § | |
| BROWN & ROOT SERVICES, INC., | § | |
| and KELLOGG, BROWN AND ROOT, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Savanah Ilise Smith, Brandy Leigh Wilkison, and Pamela Gene Karm, individually and as representatives of the Estate of Allen Keith Smith, deceased, filed this action in Texas state court against defendants, Halliburton Company, Kellogg, Brown & Root Services, Inc., and Kellogg, Brown & Root, Inc.,[1] alleging negligence stemming from a suicide bomb attack on a base in Iraq.[2] Defendants timely removed the action to this court asserting federal question and federal officer jurisdiction under 28 U.S.C.

---

[1]Defendants' pleadings state that on December 31, 2005, the principal business and related operations, assets and liabilities, rights, obligations, and contracts of Kellogg Brown & Root, Inc. were transferred to Kellogg Brown & Root LLC, a Delaware entity.

[2]Plaintiffs' Original Petition, Exhibit A2 to defendants' Notice of Removal, Docket Entry No. 1.

*Exhibit F*

§§ 1441 and 1442.[3]    Pending before the court are Defendants'
Renewed Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal
Rules of Civil Procedure (Docket Entry No. 31), Plaintiffs'
Response (Docket Entry No. 34), and Defendants' Reply to
Plaintiffs' Response to Defendants' Renewed Motion to Dismiss
(Docket Entry No. 37).    For the reasons explained below,
Defendants' Renewed Motion to Dismiss will be granted.

## I.  Factual and Procedural History

Only a brief factual summary of this case is required because
the court's previous Memorandum Order and Opinion recited the
factual background in detail.[4]  On or about December 21, 2004, a
suicide bomber walked into the dining facility[5] ("DFAC") at Forward
Operating Base ("FOB") Marez in Mosul, Iraq, and detonated
explosives packed with ball bearings and other shrapnel.[6]
Allen Keith Smith was killed, along with twenty-one other people.

A division of defendant Kellogg Brown & Root, Inc. was
operating in Iraq pursuant to Contract No. DAAA09-02-D-0007 (the

---

[3]Defendants' Notice of Removal, Docket Entry No. 1.

[4]Memorandum Opinion and Order, pp. 2-3, Docket Entry No. 13.

[5]Plaintiffs' Original Petition refers to the dining facility
as the "mess tent" but the court will refer to it as the dining
facility, or DFAC, because this is the terminology used in the
relevant contracts.

[6]Plaintiffs' Original Petition, ¶ 10, Exhibit A2 to
defendants' Notice of Removal, Docket Entry No. 1.

"LOGCAP Contract"), under which defendants provided numerous services to the United States military throughout the world.[7] LOGCAP Contract requirements are listed as Task Orders, and Task Order 59 pertains to FOB Marez and governs the food services defendants provided at FOB Marez.[8]

Plaintiffs allege that defendants were negligent in (1) failing to properly secure the DFAC, (2) failing to properly monitor the DFAC, (3) allowing a large number of people to gather at the mess tent at the same time, (4) not providing a search of the people who entered into the DFAC, (5) failing to have a secure perimeter around the DFAC, (6) failing to warn people that came into the DFAC that defendants had provided no security, and (7) failing to take reasonable precautions to make the DFAC safe from attacks and explosions of the type that killed Smith. As a

---

[7]The LOGCAP Contract, Exhibit A to Defendants' Renewed Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. LOGCAP stands for Logistics Civil Augmentation Program. Army Regulation 700-137, Logistics Civil Augmentation Program (16 December 1985). Portions of the LOGCAP Contract are attached as Exhibit A to Defendants' Renewed Motion to Dismiss, Docket Entry No. 34. This is actually the third LOGCAP contract, covering from December 2001 to the present.

[8]Task Order 59 is attached as Exhibit A to Defendants' Renewed Motion to Dismiss, Docket Entry No. 32. Plaintiffs complain that the contracts attached to Defendants' Renewed Motion to Dismiss are not the same documents produced by defendants in response to plaintiffs' discovery request. Plaintiffs' Response to Defendants' Renewed Motion to Dismiss, ¶ 9, Docket Entry No. 34. This is immaterial because plaintiffs have had adequate time to read and respond to the contracts and to all of the other documents attached to Defendants' Renewed Motion to Dismiss.

result of this negligence, plaintiffs allege that the suicide bomber was able to enter and detonate explosives, killing Smith.[9]

On February 17, 2006, defendants filed a motion to dismiss the case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[10] Defendants argued that the case should be dismissed as nonjusticiable under the political question doctrine, or, alternatively, dismissed under the Federal Tort Claims Act. The court declined to dismiss the case, concluding that the Federal Tort Claims Act combatant activities exception does not preempt the state tort law action, and that there was not a sufficient factual predicate to determine whether the case presents a nonjusticiable political question.[11] The court granted plaintiffs' request for discovery on the jurisdictional issue, and invited defendants to refile their motion for dismissal after completion of discovery.[12] Defendants have done so, filing a renewed motion to dismiss for lack of subject matter jurisdiction on political question grounds.[13]

---

[9]Plaintiffs' Original Petition, ¶¶ 12-13, Exhibit A2 to defendants' Notice of Removal, Docket Entry No. 1.

[10]Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Docket Entry No. 4.

[11]Memorandum Opinion and Order, Docket Entry No. 13.

[12]Id. at pp. 13-14.

[13]Defendants' Renewed Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## II.  **Political Question**

The political question doctrine is an aspect of "the concept of justiciability, which expresses the jurisdictional limitations imposed on the federal courts by the 'case or controversy' requirement" of Article III of the Constitution.  <u>Schlesinger v. Reservists Comm. to Stop the War</u>, 94 S.Ct. 2925, 2929 (1974). Courts lack jurisdiction over political questions that are by their nature committed to the political branches.  <u>Bancoult v. McNamara</u>, 445 F.3d 427, 432 (D.C. Cir. 2006) (quoting <u>Schneider v. Kissinger</u>, 412 F.3d 190, 193 (D.C. Cir. 2005)).  <u>See also</u> <u>Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum</u>, 577 F.2d 1196, 1203 (5th Cir. 1978).

"The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch."  <u>Japan Whaling Ass'n v. American Cetacean Society</u>, 106 S.Ct. 2860, 2866 (1986).  The following six tests determine the existence of a political question:

> (1)  a textually demonstrable commitment of the issue to a coordinate political department;
>
> (2)  a lack of judicially discoverable and manageable standards;
>
> (3)  the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;

> (4)   the   impossibility   of   a   court's   undertaking
>       independent   resolution   without   expressing   lack   of
>       the   respect   due   coordinate   branches   of   government;
>
> (5)   an   unusual   need   for   unquestioning   adherence   to   a
>       political   decision   already   made;   and
>
> (6)   the   potentiality   of   embarrassment   from   multifarious
>       pronouncements   by   various   departments   on   one
>       question.

Baker v. Carr, 82 S.Ct. 691, 710 (1962).   These six tests "are

probably   listed   in   descending   order   of   both   importance   and

certainty."   Vieth v. Jubelirer, 124 S.Ct. 1769, 1776 (2004).   The

political question doctrine is not applied unless one of the six

factors is "inextricable from the case at bar[.]"   Baker, 82 S.Ct.

at 710.   In determining if a political question exists the court

analyzes the claim "as it would be tried, to determine whether a

political question will emerge."   Occidental, 577 F.2d at 1202.[14]

In its previous opinion the court concluded that the central

inquiry   in   the   political   question   determination   was   who   had

responsibility for security at the DFAC, defendants or the United

States military?[15]   Defendants argue that the evidence produced

demonstrates that the United States military was solely responsible

---

[14]The   court   may   consider   matters   outside   the   complaint   to
resolve   the   jurisdictional   issue.   See Barrett Computer Servs.,
Inc. v. PDA, Inc., 884 F.2d 214, 220 (5th Cir. 1989) (stating that
subject   matter   jurisdiction   determinations   may   be   made   using   any
one   of   the   following   bases:   (1)   the   complaint   alone;   (2)   the
complaint supplemented by undisputed facts evidenced in the record;
or   (3)   the   complaint   supplemented   by   undisputed   facts   plus   the
court's resolution of disputed facts).

[15]Memorandum Opinion and Order, pp. 9-10, Docket Entry No. 13.

for force protection at FOB Marez.[16]    Plaintiffs respond that
defendants have not submitted any new evidence in their Renewed
Motion to Dismiss and therefore revisiting the court's previous
opinion is unnecessary.[17]  But a review of the pleadings reveals
that defendants have submitted new evidence in the form of several
sworn declarations and the relevant contract.    The contract
provides a factual framework with which the court can analyze the
legal question.[18]

The LOGCAP Contract and Task Order 59 serve as the principal
legal bases for the relationship between the Department of Defense
and the contractor.[19]  No provisions of the LOGCAP Contract or Task
Order 59 give defendants responsibility for providing force
protection in the FOB Marez DFAC to defendants.  Force protection
is defined as "[s]ecurity programs designed to protect Service

---

[16]Defendants' Renewed Motion to Dismiss Pursuant to
Rule 12(b)(1) of the Federal Rules of Civil Procedure, p. 8, Docket
Entry No. 31.

[17]Plaintiffs' Response to Defendants' Renewed Motion to
Dismiss, ¶ 37, Docket Entry No. 34.

[18]Many of defendants' subpoena requests were denied by the Army
and the Department of Defense, generally because the requested
materials were classified.  Exhibits N & O to Defendants' Renewed
Motion to Dismiss Pursuant to Federal Rule of Civil Procedure
12(b)(1).  Despite this, the court is satisfied that the evidence
obtained by defendants and submitted in their Renewed Motion to
Dismiss is sufficient to determine whether or not this case
constitutes a political question.

[19]Department of Defense Instruction 3020.41, Contractor
Personnel Authorized to Accompany the U.S. Armed Forces, ¶ 6.1.4
(October 3, 2005).

members, civilian employees, family members, facilities, information, and equipment in all locations and situations, accomplished through the planned and integrated application of combating terrorism, physical security, operations security, personal protective services, and supported by intelligence, counterintelligence, and security programs."[20]

Defendants have submitted a sworn declaration from the Administrative Contracting Officer responsible for oversight of the relevant contract stating that "[t]he Army retained the authority and responsibility for the 'security' and 'force protection' functions at FOB Marez and the Marez DFAC at all times under this contract; KBR was never entrusted with such 'security' or 'force protection' functions."[21] Instead, defendants' responsibility was to provide food services at the FOB Marez DFAC. Not only are defendants without force protection responsibilities, but the contract provides that the Service Theater Commander will provide force protection to defendants and their employees.[22]

---

[20]Department of Defense Instruction 2000.16, DoD Antiterrorism Standards, Enclosure 2 ¶ E2.1.7 (June 14, 2001).

[21]Declaration of Major Judy P. Anderson, ¶ 7, Exhibit G to Defendants' Renewed Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs object to the declaration, arguing that it constitutes an opinion as to the legal effect of a contract. Although it may contain a legal opinion, the court can determine the effect of the contract by reading it, and will consider the declaration because it is relevant insofar as it addresses the military's understanding of defendants' lack of force protection responsibilities.

[22]LOGCAP Contract, ¶ H-16, and Task Order 59, Statement of Work ¶ 1.10, Exhibit A to Defendants' Renewed Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1).

In the absence of any contractual directive to provide security, the Army assigns responsibility for force protection, including security, to the military, not to civilian contractors.[23] As contractors, defendants are required to adhere to military guidance, instructions, and general orders issued by the Theater Commander including "any and all guidance and instructions issued based upon the need to ensure mission accomplishment, force protection, and safety[.]"[24]   In addition, as contractors, defendants cannot "command, supervise, administer or control Army or Department of the Army Civilian (DAC) personnel."[25]   Although contractors may be armed, they may only be armed for the purpose of individual self-defense.[26]   The LOGCAP contract provides that the Theater Commander has discretion to allow contractors to carry

---

[23]See DoD Instruction 2000.16, ¶ E3.1.1.14.1 (June 14, 2001) ("Commanders shall maintain a comprehensive AT [anti-terrorism] program for those personnel and assets for which they have AT responsibilities"); Field Manual 100-21, Contractors on the Battlefield, ¶ 6-3 (January 2003) ("Contractor employees cannot be required to perform force protection functions . . . and cannot take an active role in hostilities").

[24]LOGCAP Contract, ¶ H-13, Exhibit A to Defendants' Renewed Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1).

[25]Army Regulation 715-9, Contractors Accompanying the Force ¶ 3-3(a) (29 October 1999).

[26]DoD Instruction 3020.41, Contractor Personnel Authorized to Accompany the U.S. Forces, ¶ 4.4.1 (October 3, 2005).

-9-

government-issue firearms.[27]    Defendants state that no such

authorization was given to defendants at FOB Marez.[28]

Defendants' evidence also demonstrates that as a practical

matter the military, not defendants, actually provided security at

the DFAC.[29] This security took the form of periodically stationing

soldiers to check identification of personnel entering the DFAC and

ensuring that loaded weapons were not brought into the DFAC.[30]

There were apparently no soldiers performing these functions on

December 21, 2004, when the DFAC was bombed, or for the several

days preceding the bombing.[31]    Nor did the military provide

defendants with any warning that the DFAC might be targeted for

attack by a suicide bomber, or targeted for any attack at all on

December 21, 2004.[32]

The evidence submitted establishes that defendants had no

responsibility for force protection, notwithstanding plaintiffs'

---

[27]LOGCAP Contract, ¶ H-21, Exhibit A to Defendants' Renewed
Motion to Dismiss Pursuant to Federal Rule of Civil Procedure
12(b)(1).

[28]Defendants' Renewed Motion to Dismiss Pursuant to
Rule 12(b)(1) of the Federal Rules of Civil Procedure, p. 12,
Docket Entry No. 31.

[29]Declaration of Mark C. Hall, ¶¶ 5 & 6, Exhibit I to
Defendants' Renewed Motion to Dismiss Pursuant to Federal Rule of
Civil Procedure 12(b)(1).

[30]Id. at ¶ 5.

[31]Id.

[32]Id. at ¶ 7.

arguments to the contrary.  The linchpin of plaintiffs' argument that defendants have force protection responsibilities as contractors is paragraph 6-4 of Field Manual 100-21, Contractors on the Battlefield, which states that "[t]he responsibility for assuring that contractors receive adequate force protection starts with the combatant commander, extends downward, and includes the contractor."[33]    Plaintiffs attempt to characterize this as establishing a chain of command for force protection, starting with the combatant commander and extending downward to the contractors. But the full text of the cited paragraph does not support plaintiffs' argument.  The entire paragraph states as follows:

> Protecting contractors and their employees on the battlefield is the commander's responsibility.  When contractors perform in potentially hostile or hazardous areas, the supported military forces must assure the protection of their operations and employees.  The responsibility for assuring that contractors receive adequate force protection starts with the combatant commander, extends downward, and includes the contractor.[34]

The first sentence of this document makes it clear that the intent is not to delegate force protection responsibilities to the contractor. Furthermore, the cited paragraph deals with protecting the contractors by military forces, not with requiring contractors to provide force protection to other parties.  The last sentence ensures that contractors comply with force protection measures

---

[33]Field Manual 100-21, Contractors on the Battlefield, ¶ 6-4 (January 2003), Exhibit F to Defendants' Renewed Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1).

[34]Id.

ordered by the commanders for their own benefit, such as using personal protective equipment and does not, as plaintiffs argue, demonstrate that the military delegated some of its force protection responsibility to defendants.

Plaintiffs also cite to a provision of Task Order 59 related to fire fighting services.

> Task Order 59 of the LOGCAP contract requires that defendants
>
> provide fire fighting protection services for U.S. Government owned or leased property, personnel and equipment on all Enduring Base Camps . . . The contractor shall provide fire department and fire protection functions according to DoD, local, state, federal and industry standards. These functions include fire protection support, emergency response, equipment and vehicle management, fire prevention and education, and training.[35]

Plaintiffs argue that fire fighting and prevention services include preventing a fire caused by a bomb explosion.[36] Reading fire prevention as broadly as plaintiffs suggest would bring this portion of Task Order 59 in unnecessary conflict with the contractual provisions requiring the United States government to provide force protection to contractor personnel.[37] In addition, the plain language of the contract belies plaintiffs' argument.

---

[35]Task Order 59, Statement of Work, ¶¶ 8.18-8.18.1, Exhibit A to Defendants' Renewed Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1).

[36]Plaintiffs' Response to Defendants' Renewed Motion to Dismiss, ¶¶ 60-62, Docket Entry No. 34.

[37]LOGCAP Contract, ¶ H-16, and Task Order 59, Statement of Work, ¶ 1.10, Exhibit A to Defendants' Renewed Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1).

The term "fire prevention" cannot reasonably be read to encompass prevention of infiltration or explosions caused by suicide bombers. Preventing suicide bomb attacks is more appropriately characterized as a force protection measure, contractually entrusted to the United States government and the military. Plaintiffs' arguments regarding the contractual provision that defendants shall be "responsible for the safety of employees and base camp residents during all operations in accordance with the Army and OSHA safety regulations and guidance" is similarly unavailing.[38] The reference to OSHA safety regulations indicates that "safety" in this provision is safety in the workplace, not security measures related to hostile forces.

Plaintiffs couch this lawsuit in terms of simple premises liability by arguing that the court need only determine what duties defendants, as possessor, occupier, and operator of the DFAC, owed to Allen Keith Smith as the invitee.[39] This formulation fails to recognize that were the case to proceed, this court would have to second-guess the decisions of the United States military, even though the suit is ostensibly against only military contractors. Although the military contracted out the logistical aspects of FOB

_____

[38]Plaintiffs' Response to Defendants' Renewed Motion to Dismiss, and Response to Defendants' Motion in the Alternative for Summary Judgment, ¶¶ 53-58, Docket Entry No. 34 (quoting Task Order 59, Statement of Work, ¶ 1.2).

[39]Id. at ¶ 65.

-13-

Marez's DFAC operations to defendants, it did not delegate the force protection responsibilities to defendants.

Another district court recently addressed the issue of how government contractors affect the political question doctrine. In Whitaker v. Kellogg Brown & Root, Inc, — F.Supp.2d —, 2006 WL 1876922 (M.D. Ga. July 6, 2006), the surviving parents of a soldier serving in Iraq sued the government contractor after their son was killed while escorting a military supply convoy operated by the government contractor. Id. at *1. Plaintiffs alleged that the defendant's drivers were negligent and that the defendant was negligent in hiring, training, and supervising those drivers. Id. The court dismissed the case on political question grounds despite the fact that the plaintiffs' allegations were against the civilian contractor. Id. at *3. "When the military seeks to accomplish its mission by partnering with government contractors who are subject to the military's orders . . . the use of those civilian contractors to accomplish the military objective does not lessen the deference due to the political branches in this area." Id.

In this case the negligence allegations in plaintiffs' complaint directly address the security of the DFAC. Plaintiffs repeatedly argue that their complaint questions only the conduct of defendants in failing to provide security, not the military's force protection policies. But this argument fails because the evidence shows that defendants had no security responsibilities for the

-14-

DFAC.  By alleging that defendants were negligent in providing security for the DFAC at FOB Marez plaintiffs are, in effect, alleging that the military was negligent in providing security for the DFAC at FOB Marez.

Even assuming, _arguendo_, that the military and defendants had concomitant responsibility for security, defendants were still operating pursuant to the military's orders, instructions, and regulations.  The _Whitaker_ court held that an injury "at the hands of a contractor which is performing military functions subject to the military's orders and regulations also raises . . . political questions."  _Whitaker_, 2006 WL 1876922 at *3.  This court agrees. Even if defendants had some responsibility for implementing force protection measures promulgated by the military, the court would still be called upon to examine the military's decision-making in many respects, including determining whether the military gathered adequate intelligence regarding the threat of terror attacks, whether it conveyed this threat to defendants, how the military planned for and implemented base access measures, and whether the implementation of force protection measures was reasonable when measured against the risk assessment level.

Examining plaintiffs' complaint in this light, the court concludes that the first three _Baker v. Carr_ tests are inextricable from the case at bar.  The Constitution textually commits the issues in this case to the political branches.  Article II, § 2 of

-15-

the United States Constitution appoints the President Commander in Chief of the armed forces.  Article I, § 8 grants to Congress authority to raise and support Armies, to provide and maintain a Navy, and to make rules for the governing and regulation of the land and naval forces.  Courts have found that "the political branches of government are accorded a particularly high degree of deference in the area of military affairs."  Aktepe v. United States, 105 F.3d 1400, 1403 (11th Cir. 1997).  Allowing this action to proceed would require the court to substitute its judgment on military decision-making for that of the branches of government entrusted with this task.  To determine whether the force protection in place was adequate the intelligence gathering, risk assessment, and security measures implemented by the military at FOB Marez would have to be examined.  Because the suicide bomber managed to enter the base, the court would also have to examine base perimeter security.  "The control of access to a military base is clearly within the constitutional powers granted to both Congress and the President."  Cafeteria and Restaurant Workers Union, Local 473 v. McElroy, 81 S.Ct. 1743, 1746 (1961).  Judicial review of such decisions would intrude onto critical areas reserved to the Legislative and Executive Branches of government by the Constitution.

Moreover, there exists a lack of judicially discoverable and manageable standards to resolve this case.  In order to determine if defendants acted reasonably as possessor, occupier, and operator

-16-

of the DFAC, the court would have to decide what constitutes reasonable security measures at a military base located in an area of Iraq subject to threats from hostile forces. The court would have to assess what intelligence had been gathered regarding potential threats and evaluate whether the security measures implemented were reasonable in light of the potential threats. Security measures on military bases balance the need for functionality and access with the need for force protection. In striking this balance the military must also allocate limited personnel and resources, with the need for security on base competing with mission requirements off base in Iraq as well as throughout the world. The court would have to determine if the military was reasonable in striking this balance. Courts lack the facts, expertise, and standards necessary to evaluate whether reasonable care was taken in these circumstances.

Finally, the issues in this case could not be resolved without an initial policy determination of a kind clearly for nonjudicial discretion. The court would substitute its judgment for that of the military on the issue of whether adequate force protection measures were in place. The court would also have to examine the military's policy of feeding soldiers by gathering them in one centralized location. Since the suicide bomber was apparently wearing an Iraqi uniform, the decision to allow Iraqi troops to dine in the DFAC would also be at issue. These are just a few

-17-

examples of the many policy determinations that were involved in implementing force protection measures at the FOB Marez DFAC. "The complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches." Gilligan v. Morgan, 93 S.Ct. 2440, 2446 (1973). Policy determinations involving force protection measures in a hostile area of Iraq are clearly not appropriate for judicial determination.

For the foregoing reasons, the court concludes that it lacks jurisdiction to hear this case because it constitutes a nonjusticiable political question.

### III. **Plaintiffs' Motions to Compel Discovery and for Leave to Amend**

Plaintiffs have requested that defendants be ordered to respond to plaintiffs' discovery request.[40] This request is **DENIED**. Plaintiffs received defendants' responses to their discovery requests on July 10, 2006, but waited until filing their response to Defendants' Renewed Motion to Dismiss on August 22, 2006, to complain about defendants' discovery production.[41] Plaintiffs had

---

[40]Plaintiffs' Response to Defendants' Renewed Motion to Dismiss, p. 25, Docket Entry No. 34.

[41]Exhibits A & B to Plaintiffs' Response to Defendants' Renewed
(continued...)

more than adequate time to file a motion to compel production prior to filing their response.  Furthermore, the evidence adduced by defendants was sufficient to determine that this case is nonjusticiable on political question grounds.

Plaintiffs also request leave to amend their complaint after receipt of defendants' response.[42]  Federal Rule of Civil Procedure 15(a) states that "leave to amend should be freely given when justice so requires."  However, a district court can deny leave to amend when allowing the amendment would be futile.  Jamieson v. Shaw, 772 F.2d 1205, 1208 (5th Cir. 1985).  See also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co., 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.").  The evidence clearly establishes that the military had primary responsibility for force protection. Furthermore, the court has already examined the case as if the military and defendants had concomitant force protection responsibilities and determined that the case would still present a nonjusticiable political question.  Allowing further discovery or amendment in this case would be futile because amending the complaint would not alter the basic nature of the instant case and the nonjusticiable political questions involved.  Plaintiffs' motion for leave to amend their complaint is therefore **DENIED**.

---

[41](...continued)
Motion to Dismiss, Docket Entry No. 34.

[42]Id.

## IV.    Conclusions and Order

For the foregoing reasons, Defendants' Renewed Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Docket Entry No. 31) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 30th day of August, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-20-