UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SEAN LESSIN, *et al*, § | |
| § | |
| Plaintiffs, § | |
| v. § | CIVIL ACTION NO. H-05-01853 |
| § | |
| KELLOGG BROWN & ROOT, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Pending before the Court are Defendant's Motion to Dismiss Pursuant to Rule 12(b) (Docket # 24) and Plaintiffs' Motion for Continuance (Docket # 29). For the reasons set forth below, Defendant's Motion is **DENIED**. Plaintiffs' Motion is **DENIED AS MOOT**.

**I. Background**

This case arises from injuries sustained by Plaintiff Sean Lessin ("Lessin") on Main Supply Route Tampa in Iraq, in March 2004. At the time of the incident, Lessin, a member of the United States Army, was providing a military escort for a commercial truck convoy allegedly owned, operated, or controlled by Defendant. While en route to Kuwait, one of the convoy trucks suffered an equipment malfunction with one of its loading ramps and was required to stop at the side of the route, in a combat zone. The military escort secured the perimeter around the vehicle against potential insurgent attacks, and Lessin attempted to assist the driver of the malfunctioning truck. While doing so, Lessin was stuck in the head by the ramp assist arm for the truck and suffered a traumatic brain injury.

Plaintiffs subsequently filed this lawsuit, alleging that Defendant was negligent in inspecting, maintaining, and repairing the truck that injured Lessin, and in supervising the driver who was operating the truck. Plaintiffs further allege that the truck driver was negligent in using the ramp assist arm of the truck, and in failing to warn Lessin. Defendant has filed a motion to

dismiss Plaintiffs' suit, urging that the court lacks jurisdiction over this case because it involves a political question of the military's decision-making in combat scenarios, and because the combatant activities exception to the Federal Tort Claims Act protects military defense contractors like Defendant, who provide services to the armed forces of the United States. Following a hearing on Defendant's motion to dismiss, and having considered the parties' briefs, the Court concludes that Plaintiffs' lawsuit should not be dismissed at this time.

## II. Political Question Doctrine and Justiciability

Defendant first asserts that this case should be dismissed as nonjusticiable under the political question doctrine. The political question doctrine arises from the separation of powers among the three branches of government, and "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. American Cetacean Soc.*, 478 U.S. 221, 230 (1986). Because political questions are nonjusticiable under Article III of the Constitution, courts lack jurisdiction to decide such cases. *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum*, 577 F.2d 1196, 1203 (5th Cir. 1978).

In *Baker v. Carr*, the Supreme Court set forth six elements indicative of a nonjusticiable, political question:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or
>
> [2] a lack of judicially discoverable and manageable standards for resolving it; or
>
> [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or
>
> [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or

2

[5] an unusual need for unquestioning adherence to a political decision already made; or

[6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. 186, 217 (1962). These six tests are "probably listed in descending order of both importance and certainty." *Vieth v. Jubelirer*, 541 U.S. 267, 278 (2004). "Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for non-justiciability on the ground of a political question's presence." *Baker*, 369 U.S. at 217.

With respect to the first *Baker* factor, Defendant argues that Plaintiffs' claims necessarily involve issues committed to the executive branch, including military decision-making and the conduct of military operations. Defendant contends that, because Lessin was injured while attempting to assist the malfunctioning convoy truck, adjudicating Plaintiffs' claims will require an inquiry into whether Lessin was trained properly on civilian equipment, whether he complied with applicable military regulations and directives regarding civilian contractor convoys, and whether these military regulations were adequate to prevent his injury. Defendant additionally asserts that the executive branch has exercised its constitutional authority over military conduct by investigating Lessin's injury and adopting new procedures that prohibit military personnel from assisting civilian convoys, except when authorized by the convoy escort commander.

Defendant also argues that Plaintiffs' claims in this case will implicate the second *Baker* factor, because they are not susceptible to resolution by judicially discoverable standards. According to Defendant, this case will necessarily require a determination of whether the military exercised reasonable judgment in permitting the civilian truck at issue to be a part of the military convoy, whether it was reasonable for the military to stop the convoy in a combat zone to attempt to repair the truck, whether it was appropriate for Lessin to assist in the truck's repair, and whether the military exercised an appropriate level of maintenance over the truck. Defendant urges that

3

these determinations will depend upon an analysis of military needs and priorities, which the Court is not equipped to undertake.

Lastly, Defendant argues that the third and fourth *Baker* factors apply to this case, which it contends will require the Court to undertake an initial policy decision concerning the interaction between military personnel and civilian contractors in a combat zone, and to express a lack of respect due to the coordinate branches of government that oversee such war efforts.  Defendant cites several district court cases, in which Defendant asserts that the courts held the political question doctrine to bar adjudication of cases analogous to the one at bar.  *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486 (C.D. Cal. 1993); *Zuckerbraun v. Gen. Dynamics Corp.*, 755 F. Supp. 1134 (D. Conn. 1990); *Nejad v. United States*, 724 F. Supp. 753 (C.D. Cal. 1989).

Defendant's cited cases, in addition to not being controlling authority for this Court, are distinguishable from the case at bar.  In each of these cases, the court explicitly recognized that military decision-making or policy would be a necessary inquiry, inseparable from the claims asserted.  In *Bentzlin*, the plaintiffs' decedents had been killed by missiles fired by a U.S. Air Force aircraft, and the court found that the resulting claims "necessarily require inquiry into military strategy and, more specifically, orders to A-10 pilots and ground troops." 833 F. Supp. at 1497.  *Nejad* also involved alleged manufacturing defects with respect to missiles that had been fired by a U.S. military vessel.  724 F. Supp. at 754-55.  Because the decedents in *Nejad* had been killed by fire from a U.S. warship, the court found it "indubitably clear that plaintiffs' claim calls into question the Navy's decisions and actions in execution of those decisions." *Id.* at 755.  In *Zuckerbraun*, in which a U.S. warship was fired upon by a foreign aircraft, the court found that it would be required to "examine the appropriateness of the rules of engagement and the standing orders," as well as "the appropriateness of the reaction of the [warship] crew to the [incident]." 755 F. Supp. at 1142.  This Court agrees that, where the military's strategy, decision-making, or

4

Case 4:05-cv-1843-CSC Document 47 Filed 06/12/2006 Page 5 of 8

orders are necessarily bound up with the claims asserted in a case, the political question doctrine is implicated, and the case is inappropriate for judicial inquiry.

Here, however, Plaintiffs' claims that Defendant acted negligently are not certain to implicate such topics, or any others that are committed to the political branches. The incident at issue in this case was, essentially, a traffic accident, involving a commercial truck alleged to have been negligently maintained, as well as a civilian truck driver who was allegedly negligent in operating the truck and insufficiently trained.[1] Claims of negligence arising from this type of incident are commonly adjudicated by courts, using well-developed judicial standards. While the actions taken by Lessin, a military officer, in assisting the truck will likely be relevant to causation, it is by no means clear that the policies or decisions of the military or of the executive branch itself will be implicated in this case. It does not follow, therefore, that the case will require initial policy decisions committed to the discretion of the political branches, or that adjudication of the case will evince a lack of respect for the political branches.

A finding that this case will necessarily involve nonjusticiable political questions, particularly before discovery has been completed and all parties properly joined, would expand the political question doctrine beyond its current applications and boundaries. Because the Court cannot conclude that one of the political question formulations set forth in *Baker* will be "inextricable from the case at bar," it cannot dismiss Plaintiffs' claims on political question grounds. *Baker*, 369 U.S. at 217. Should discovery reveal additional facts pertinent to Defendant's assertion of the political question doctrine, Defendant may renew its motion to dismiss at that time.

---

[1] The Court notes, however, that Defendant's status as a private corporation, rather than a military entity, does not prevent Defendant from asserting the political question doctrine. As Defendant correctly notes, many courts have permitted private entities to move for dismissal of a case against them based upon the political question doctrine. *See United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990) ("[T]he identity of the litigant is immaterial to the presence of [political question] concerns in a particular case.") (emphasis omitted).

5

**III. Combatant Activities Exception**

In addition to its assertion of the political question doctrine, Defendant contends that the combatant activities exception contained within the Federal Tort Claims Act ("FTCA") preempts Plaintiffs' claims in this case. The FTCA constitutes a limited waiver of the United States government's sovereign immunity from civil suit and damages, with a number of exceptions. *See* 28 U.S.C. § 2674; *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). One of these exceptions to the FTCA's waiver of sovereign immunity includes "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). As Defendant concedes, this exception does not apply directly to government contractors, such as Defendant. Defendant cites to two cases, however, in which the exception has been extended to government defense contractors.[2]

In *Koohi v. United States*, heirs of the deceased passengers and crew of an Iraqi civilian aircraft filed suit after a United States warship shot down the aircraft, during the "tanker war" between Iran and Iraq. 976 F.2d 1328, 1329-30 (9th Cir. 1992). The lawsuit named as defendants both the United States and the civilian manufacturers of the weapons systems used by the U.S. warship. *Id.* at 1330. Citing the Supreme Court's formulation of the government contractor defense in *Boyle*, the Ninth Circuit found that the combatant activities exception to the FTCA should apply to the manufacturer, and thereby "shield from liability those who supply ammunition to fighting vessels in a combat area." *Id.* at 1336. The court based its holding, in part, on its recognition that "during wartime encounters no duty of reasonable care is owed to those *against whom force is directed* as a result of authorized military action." *Id.* at 1337 (emphasis added).

---

[2] In its Reply in support of its motion to dismiss, Defendant clarifies that it is asserting the "combatant activities exception" to the FTCA, rather than the affirmative "government contractor defense" laid out by the Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). Although these theories are in some ways similar, Defendant has made it clear that it does not intend to assert the government contractor defense at this time, and the Court will therefore refrain from any analysis of this defense in relation to the present case.

6

Similarly, in *Bentzlin v. Hughes Aircraft Co.*, the plaintiffs' decedents had been killed by missiles fired by a U.S. Air Force aircraft, and the plaintiffs brought suit against the manufacturers of the missiles. 833 F. Supp. 1486, 1487 (C.D. Cal. 1993). Relying upon the Ninth Circuit's decision in *Koohi*, the court held that the combatant activities exception applied to the missile manufacturers in that case, noting that "[s]uch a defense for manufacturers of equipment that allegedly malfunctions during combat arises from the fact that certain federal interests implicated in war – such as secrecy of wartime strategy and military morale – would be undermined by state tort suits against such manufacturers." *Id.* at 1493. The court also noted the importance of avoiding delays in the delivery of weapons in combat, as well as the practical problems with retaining evidence from the "battlefield." *Id.* at 1493-95.

As Defendant points out, one court from the Southern District of Texas has already recognized that these cases, in which a government contractor provided the military with supplies, are distinguishable from those in which a government contractor provides the military with services. *Fisher v. Halliburton*, 390 F. Supp. 2d 610, 615-16 (S.D. Tex. 2005). The vital distinction is not simply one between supplies and services, however, but rather one involving the military's role in the incident at issue. In both *Koohi* and *Bentzlin*, the injuries at issue arose from the United States' use of weapons during combat. Thus, as the court held in *Fisher*, "each of these cases involved claims involving complex equipment acquired by the Government in its procurement process, which inevitably implicates nuanced discretion and sophisticated judgments by military experts." *Id.* at 616. Such military decision-making is not implicated here, where, instead of manufacturing weapons, which were then procured and utilized by the military in combat, Defendant itself provided a convoy service. Additionally, in *Koohi*, the court was also concerned with the lack of any duty of reasonable care owed to a perceived enemy during combat.

7

This case, on the contrary, concerns the duty of care owed by a private corporation to United States citizens, and the concern noted by the court in *Koohi* is inapplicable to this case.

In the absence of additional authority, and in light of the distinctions between the *Koohi* and *Bentzlin* cases and the case at bar, the Court declines to extend the combatant activities exception. Accordingly, Defendant's motion to dismiss this case as barred by the combatant activities exception to the FTCA is denied. Again, dismissal is without prejudice to Defendant's right to renew the motion if facts adduced in discovery so warrant.

### IV. Plaintiffs' Motion to Continue

In response to Defendant's motion to dismiss, Plaintiffs urge that it would be unfair for the Court to dismiss the case, under either the political question doctrine or the combatant activities exception, until the parties have conducted additional discovery into these defenses. The Court has now found that, based upon the facts available at this time, granting Defendant's motion to dismiss would be inappropriate. At a hearing before the Court on April 20, 2006, the Court also extended the deadline for discovery to November 1, 2006. Accordingly, Plaintiffs' motion is denied as moot.

### V. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss Pursuant to Rule 12(b) is **DENIED**. Plaintiffs' Motion for Continuance is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

**SIGNED** this 12th day of June, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT