IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOHNNY POTTS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  3:06cv124-WHA |
| ) | |
| DYNCORP INTERNATIONAL LLC, ) | (WO) |
| JAMES MCCANTS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This cause is before the court on a Motion to Amend Answer to assert the defense of lack of subject matter jurisdiction (Doc. #27 ) filed by Defendant Dyncorp International LLC ("Dyncorp") on September 11, 2006.  The Plaintiff originally filed a Complaint in this case on February 9, 2006, bringing claims for negligence and wantonness (Counts One and Two), negligent and/or wanton hiring, training and supervision (Count Three), and loss of consortium (Count Four).  Because the request to amend effectively has raised the issue of subject matter jurisdiction, the court will address this motion to determine whether the present motion is futile because the court has subject matter jurisdiction, or whether the court lacks subject matter jurisdiction.

After careful consideration of the evidence and briefs submitted by the parties, for reasons to be discussed the Motion to Amend is due to be DENIED as futile.

## II. APPLICABLE STANDARDS OF REVIEW

(A) *Motion to Amend*

The Federal Rules of Civil Procedure state that leave to amend should be freely given when justice so requires. Fed. R. Civ. Pro. 15(a). While discretion of whether to grant leave to amend a pleading lies with the trial court, a justifying reason must be apparent for denial of a motion to amend. *Foman v. Davis*, 371 U.S. 178, 181 (1962). A district court, however, may properly deny leave to amend a complaint under Rule 15(a) when such amendment would be futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004).

(B) *Lack of Subject Matter Jurisdiction*[1]

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." A "facial attack" on the complaint requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). A "factual attack," on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings. Lawrence, 919 F.2d at 1529. Under a factual attack, the court may hear conflicting evidence and decide the factual issues that determine jurisdiction. Colonial Pipeline Co. v. Collins, 921 F.2d 1237, 1243 (11th Cir. 1991). The Defendant here has made a factual attack, and the court has considered the evidence submitted. The burden of proof on a Rule

---

[1] The court will discuss this matter as though it were a question of subject matter jurisdiction, because that is the way that the Defendant has characterized it. Actually, the issue raised by the Defendant, i.e. the "political question doctrine," is not one of subject matter jurisdiction, but one of justiciability, i.e., whether the court has the authority to exercise its jurisdiction. *Baker v. Carr*, 369 U.S. 186, 198 (1962). The final result would be the same either way.

12(b)(1) motion is on the party averring jurisdiction. Thomson v. Gaskill, 315 U.S. 442, 446 (1942).

Rather than allowing the Amended Answer raising the same issue as a Rule 12(b)(1) motion, the court has elected to determine the question of subject matter jurisdiction on the basis of futility of such an amendment. The same analysis will apply as with a Rule 12(b)(1) motion.

### III. FACTS

The allegations of the Plaintiff's Complaint are as follows:

On September 3, 2004, a convoy of vehicles, directed by Dyncorp under its contractual duties with the Coalition Provisional Authority ("CPA")[2], was traveling east on the primary road between Trebil, Jordan and Baghdad, Iraq. The Plaintiff, Johnny Potts, an employee of Worldwide Network Services, Inc., was a passenger in one of these vehicles, which was driven by James McCants, an employee of Dyncorp. Throughout the course of the trip, McCants drove the car at a high rate of speed, in excess of 99 miles per hour. During one of these periods where McCants was driving at a high rate of speed, the vehicle came across a black object in the road (which later was identified as a dog). McCants, unsure of whether the black object was dangerous, swerved to avoid it. Subsequently, the vehicle flipped several times and burst into flames. As a result of this accident, Potts sustained serious bodily injuries, including a broken right tibia and fibula, as well as the severe pain and suffering associated with these injuries.

---

[2] The CPA was dissolved on June 28, 2004, but Dyncorp's contract was extended by the Project and Contracting Office, a U.S. government entity operated by the Department of Defense under the authority of the Department of State. The contract continued in full force and effect.

## IV. **DISCUSSION**

Defendant Dyncorp seeks to amend its Answer to assert lack of subject matter jurisdiction on the basis that the political question doctrine is applicable. In short, Dyncorp argues that the determination of the Plaintiffs' claims would require the court to assess, among other things, the propriety of the security procedures set forth in Dyncorp's contract with the Coalition Provisional Authority. Dyncorp further argues that, in doing so, the court ultimately would pass judgment on United States foreign policy, a function of government that is reserved to the executive and legislative branches.

The political question doctrine arises under the case and controversy requirement of Article III of the Constitution, based on concerns over separation of powers between the coordinate branches of government. *See Made in the USA Found. v. United States*, 242 F.3d 1300, 1312 (11th Cir. 2001). This doctrine recognizes that certain subject matters should be left to the politically accountable branches of government. As such, federal courts will refuse to rule on certain matters, instead dismissing such matters and leaving them to be resolved by political processes. *See* ERWIN CHEMERINSKY, FEDERAL JURISDICTION §2.6.1 (4th ed. 2003). If the doctrine applies, courts refuse to exercise any jurisdiction they otherwise might have.

"Generally, all cases involving foreign affairs potentially raise nonjusticiable political questions." *Aketepe v. United States*, 925 F. Supp. 731, 736 (M.D. Fla. 1996); *see also Oetjen v. Central Leather Co.*, 246 U.S. 297 (1917). Not all cases involving foreign affairs, however, present such political questions, and the cases that are non-justiciable must be distinguished based on the particular issues presented. *See Baker v. Carr*, 369 U.S. 186 (1962) ("[I]t is error to suppose that every case which touches foreign relations lies beyond judicial cognizance."). Regarding cases involving foreign policy decisions like the present one, the court "must

carefully consider the extent to which the case involves basic policy decisions entrusted solely to the executive in discharge of its Constitutional role. Executive action that only indirectly gives content to some foreign policy issue is not outside the scope of review." *Atekepe*, 925 F. Supp. at 736. As such, judicial review is only prohibited "[i]n the narrow band of governmental action where foreign policy interests are direct and substantial." *Spacil v. Crowe*, 489 F.2d 614, 619 (5th Cir. 1974).[3]

While the aforementioned generalizations are relevant in determining whether this particular case presents a non-justiciable political question, the court must evaluate the case under the particular guidelines set forth by the Supreme Court in *Baker v. Carr*. In that case, the Supreme Court established the framework by which lower courts determine whether a case presents a non-justiciable political question. The *Baker* test consists of six factors. The Court determined that:

> Prominent on the surface of any case held to involve a political question is found
> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or
> [2] a lack of judicially discoverable and manageable standards for resolving it; or
> [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or
> [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or
> [5] an unusual need for unquestioning adherence to a political decision already made; or
> [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217. The *Baker* Court further indicated that each of these factors is assessed individually, and the existence of even one of these factors is sufficient to make the matter non-justiciable. *See id.* ("Unless one of these formulations is inextricable from the case at bar, there

---

[3] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981, en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

should be no dismissal for nonjusticiability on the ground of a political question's presence."). Therefore, in the present case, Dyncorp must demonstrate that at least one of the *Baker* factors makes this case non-justiciable. It should be noted, however, that the *Baker* test is extraordinarily broad and difficult to apply in a vacuum. Therefore, courts typically must rely for guidance on previous interpretations of the specific areas where the political question doctrine was addressed. *See* CHEMERINSKY, FEDERAL JURISDICTION §2.6.1.

Although the first two factors appear most relevant to this case and predominate the discussion in the briefs submitted by the parties, each of the first four *Baker* factors will be discussed individually. The final two *Baker* factors were not raised by Dyncorp as pertinent to the present case, and the court finds that these factors are not applicable. Thus, the four pertinent *Baker* factors are addressed below:

(1) *Textually Demonstrable Commitment to a Coordinate Branch*

The first *Baker* factor provides that an issue is non-justiciable if it involves "a textually demonstrable constitutional commitment of the issue to a coordinate political department." Dyncorp suggests that a textually demonstrable commitment exists in the present circumstances because the United States Constitution delegates foreign policy and military decisions to the Executive and Legislative Branches. *See* U.S. CONST. art. I, §8, cls. 11-16; U.S. CONST. art. II, §2. Case law further supports Dyncorp's basic proposition. *See Baker*, 369 U.S. at 211 ("Not only does resolution of [foreign relations] issues frequently turn on standards that defy judicial application, or involve the exercise of a discretion demonstrably committed to the executive or legislature[,] but many such questions uniquely demand single-voiced statement of the Government's views."); *Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention."). As

noted above, however, the *Baker* Court also indicated clearly that not all issues of foreign relations are outside of the realm of judicial review. Therefore, the pertinent question is whether the case at bar involves decisions regarding foreign policy at such a level where judicial review would encroach upon the constitutional authority of one or both of the politically accountable branches.

Dyncorp specifically suggests that this case involves the assessment of military policy decisions and, therefore, the court would usurp the constitutional authority of the other two branches by hearing this case. If this case does indeed involve an appraisal of military policy, then it almost certainly is non-justiciable. *See e.g., Aktepe v. United States*, 105 F.3d 1400, 1403 (11th Cir.1997)("[T]he political branches of government are accorded a particularly high degree of deference in the area of military affairs.); *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)("The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches. The ultimate responsibility for these decisions is appropriately vested in branches of the government which are periodically subject to electoral accountability."). This particular case, however, involves an assessment of Dyncorp's own policies, which possibly may have been affected by its contract with the Coalition Provisional Authority but were not controlled by the military policies and procedures of the United States.

The pertinent portion of Dyncorp's contract with the CPA relating to this case is the description of the supplies and services to be provided. The contract states that "Contractor [Dyncorp] will provide all personnel, equipment, training and management necessary to secure the oil-for-food program goods being hauled into the country of Iraq from all the border

crossings for Turkey, Syria and Jordan and the port of UMM Qasr. . . ." Def. Ex. D., Doc. 33, pp. 25, 49 and 68.   To facilitate these services, the contract indicates that Dyncorp's management team would maintain an Operations Support Manager who would be "responsible for the day-to-day execution of security services" and would be "responsible for the compliance in the execution of all deployed processes and procedures as well as oversight of the operations, which includes security, quality control, and training."  Def. Ex. D., Doc. 33, p. 28.  Dyncorp further agreed in this contract that it was "responsible for the professional and technical competence of its employees" and that it would select reliable individuals" who would "perform effectively in the implementation of this Contract. . . ."  Def. Ex. D., Doc. 33, p. 58.  Most important, the contract clearly states that Dyncorp is an independent contractor and that its employees "will not be considered government employees for any purpose."  Def. Ex. D., Doc. 33, p. 58.

    Considering the contract as a whole, one critical fact is evident.  Dyncorp's own internal policies regarding procedures, training and management controlled its conduct in Iraq.  Dyncorp mischaracterizes the issue by implying that the court would have to assess United States military or State Department policies and procedures to determine whether Dyncorp was negligent.  Instead, the court simply would evaluate Dyncorp's internal policies.  As the Plaintiffs correctly summarize the situation in their brief, the Dyncorp contract "was a civilian contract to provide non-military security services to non-military personnel for the purpose of delivering non-military supplies."  Such a contract does not raise separation of powers concerns.  Moreover, the court's hearing of this case would not encroach upon a textually demonstrable commitment to a coordinate branch of government.

In addition to the Dyncorp contract, outside evidence further negates Dyncorp's position. The July 2005 report of the United States Government Accountability Office demonstrates that, at the time of the Plaintiff's injury, the private security providers in Iraq were not managed or controlled by the United States military forces. Throughout the report, it is noted that "U.S. Military forces in Iraq do not have a command and control relationship with private security providers or their employees." Def. Exh. A, Doc. 34, pp.76-77. This evidence further suggests that there is no encroachment on a textually demonstrable commitment to a coordinate branch.

In an attempt to bolster its argument, Dyncorp points to two recent cases implicating the political question doctrine. These cases are *Whitaker v. Kellogg, Brown & Root*, 444 F. Supp. 2d 1277 (M.D. Ga. 2006) and *Smith v. Halliburton Co.*, Civil Action No. H-06-0462, 2006 WL 2521326 (S.D. Tex. Aug. 30, 2006). Both of these cases involved private contractors, and the courts found that each case presented a political question. The case at issue, however, easily can be distinguished from *Whitaker* and *Smith*. While the present case also involves a suit against a private contractor, there is no direct link to the United States military, as there was in *Whitaker* and *Smith*.

In *Whitaker*, a United States soldier was killed while escorting a military convoy operated by the private contractor, KBR. The surviving parents of the deceased sued KBR for negligence. *Whitaker*, 444 F. Supp. 2d at 1278. KBR argued that the case presented a political question, because it turned on strategic and tactical military decisions made in the combat zone. *Id.* The evidence, including Army regulations regarding convoy operations and the use of civilian contractors, suggested that the KBR's employees were performing their duties subject to military planning, orders and regulations. *Id.* at 1281. As a result, because there is a textually

demonstrable commitment of oversight and control of military forces to the legislative and executive branches, the court found that the case presented a non-justiciable political question.

Similarly, in *Smith*, a private contractor worked directly for the United States military, providing a dining facility at the Forward Operating Base Marez in Mosul, Iraq. *Smith*, 2006 WL 2521326 at *1-*2. The evidence suggested that the private contractor was "operating pursuant to the military's orders, instructions and regulations." *Id.* at *5. As such, to rule on the matter at hand, that court would have had to determine whether the military's security measures were adequate at that particular Forward Operating Base. *Id.* at *6. Such determination "would require the court to substitute its judgment on military decision-making for that of the branches of government entrusted with [that] task." *Id.* Therefore, the court ruled that the case was non-justiciable.

In contrast to *Whitaker* and *Smith*, the present case concerns the potential negligence and/or wantonness of a private contractor, Dyncorp, which was employed by the Coalition Provisional Authority to provide security services for civilians involved in rebuilding efforts. *Whitaker* and *Smith* invoked the political question doctrine because of the direct relationship in those cases between the private contractors and the United States military. Simply stated, those cases required the courts to assess military policies and procedures. On the contrary, this case merely requires the court to assess Dyncorp's own internal policies and does not concern a direct relationship between Dyncorp and the United States military. Therefore, Dyncorp's reliance on *Whitaker* and *Smith* is unfounded.

Instead, this case is comparable to *McMahon v. Presidential Airways, Inc.*, No. 6:05-CV-1002ORL28JGG, 2006 WL 3085606 (M.D. Fla., Sept. 27, 2006). In that case, the survivors of three United States servicemen sued Presidential Airways, which had contracted

with the United States Department of Defense to provide air transportation and support in Afghanistan. *McMahon*, 2006 WL 3085606 at *1. In *McMahon*, the court distinguished certain cases in which the political question doctrine insulated private contractors from liability, including both *Smith* and *Whitaker*, because the courts in those cases had emphasized the control that the United States had over the conduct at issue or the private parties themselves. *Id.* at *2. The *McMahon* court noted that "[t]he key inquiry is whether a court will have to question the wisdom of military operations and decision-making, or whether the court need only consider the private contractor's performance under the contract." *Id.* at *6. The *McMahon* court found that it did not need to assess any military strategies to decide that case and, as a result, found that the court's hearing of the case would not encroach on a textually demonstrable commitment to another branch. *Id.* Similarly, in the present case, there is no evidence of significant control of Dyncorp's operations by the United States military. In fact, most of the evidence negates Dyncorp's argument that the military had any control of their operations whatsoever. Therefore, because the present case is more like *McMahon* than *Whitaker* or *Smith*, this court is persuaded to follow the reasoning of the *McMahon* court.

In sum, the evidence in this case does not suggest that the court will have to assess the policies of the United States military, the Defense Department, or the State Department. Instead, to determine the alleged negligence and/or wantonness of Dyncorp, the court will only be required to assess the internal policies of Dyncorp and the actions of the parties regarding the accident in question. Such assessments do not encroach upon any textually demonstrable commitment to a coordinate branch.

(2) *Lack of Judicially Discoverable and Manageable Standards*

The second *Baker* factor provides that an issue is non-justiciable if it involves "a lack of judicially discoverable and manageable standards for resolving it." Dyncorp argues that there are no judicially discoverable or manageable standards available to resolve the issues presented in this case. In short, Dyncorp argues that this case involves a car accident on a dangerous highway in a war zone and is not a typical car accident case. As such, Dyncorp suggests that the court is unable to determine what a reasonable driver would do when faced with the possibility of a hostile fire situation.

Dyncorp again wrongfully relies on *Whitaker* to support its proposition. Dyncorp points to the *Whitaker* court's statement that "[t]he question here is not just what a reasonable driver would do - it is what a reasonable driver in a combat zone, subject to military regulations and orders, would do. That question necessarily implicates the wisdom of the military's strategic and tactical decisions, a classic political question over which this Court has no jurisdiction." *Whitaker*, 444 F. Supp. 2d at 1282. Dyncorp fails to acknowledge, however, that the present situation is not comparable, because there is no direct relationship between Dyncorp and the United States military. Moreover, Dyncorp was not acting "subject to military regulations and orders" like the private contractor in *Whitaker*. Thus, the *Whitaker* rationale is not applicable to the present situation.

Instead, this case more closely corresponds to *Lessin v. Kellogg Brown & Root*, No. 05-01853, 2006 U.S. Dist. LEXIS 39403, *1 (S.D. Tex. June 12, 2006). The *Lessin* case involved the death of a U.S. soldier who was attempting to help a private contractor whose truck had malfunctioned. Regarding the second *Baker* factor, the *Lessin* court reasoned that "[t]he incident . . . was, essentially, a traffic accident, involving a commercial truck alleged to have been negligently maintained, as well as a civilian truck driver who was allegedly negligent in

operating the truck and insufficiently trained. Claims of negligence arising from this type of incident are commonly adjudicated by courts, using well-developed standards." *Id.* at *8. Here, the case is very similar - a civilian contractor was injured while riding in the vehicle of a private contractor. Even though the car accident occurred in Iraq, the court nonetheless will be able to assess whether Dyncorp's driver acted negligently or wantonly under circumstances existing at the time of the accident and whether Dyncorp was negligent or wanton in the hiring, training, or supervision of its driver. No military orders or procedures place the determination of negligence outside the capacity of this court. In fact, the evidence in this case indicates that Dyncorp's own policies and procedures controlled its conduct in Iraq. Therefore, although not the typical car accident case, the court's ability to resolve the issue is not affected so detrimentally as to render the case non-justiciable.

In sum, the court is able to assess whether the private contractor was negligent or wanton, even when performing services in a war zone. The fact that the car accident at issue occurred in a war zone does not automatically result in a lack of judicially discoverable and manageable standards for resolving the issue.

(3) *Impossibility of Decision Without Making Clearly Non-Judicial Policy Determination*

The third *Baker* factor provides that an issue is non-justiciable if it involves "an initial policy determination of a kind clearly for non-judicial discretion." Dyncorp suggests that deciding the present case would require the court to review military and foreign policy decisions, such as the decision to hire private contractors. This argument, however, cannot withstand scrutiny.

First, in deciding this case, there is no "initial policy determination" to make. In fact, Dyncorp's own brief discusses a "review" of policy determinations, which is simply a reiteration

of its arguments under the first *Baker* factor. Therefore, Dyncorp's argument does not actually address the cited factor.

Second, even assuming that Dyncorp's argument does somehow address this factor, the determination of this case does not require even a "review" of military or foreign policy decisions, much less an "initial policy determination." To decide this case, the court must determine whether Dyncorp acted negligently or wantonly in the performance of its duties under its contract with the Coalition Provisional Authority. As noted earlier, this contract did not subject Dyncorp to military control, management, orders or procedures. Instead, Dyncorp's own internal policies controlled its conduct. Moreover, the United States's accountability report indicated that no command or control relationship existed with independent contractors in Iraq at the time of this accident. Therefore, to decide this case, the court does not have to review military or foreign policy decisions with respect to Iraq, such as the decision to hire private contractors. Instead, the court must simply decide whether Dyncorp acted negligently or wantonly - a decision that does not require an initial policy determination of a kind clearly for non-judicial discretion.

(4) *Lack of Respect Due Coordinate Branches of Government*

The fourth *Baker* factor provides that an issue is non-justiciable if a court cannot undertake "independent resolution without expressing lack of the respect due coordinate branches of government." Again, Dyncorp argues that any resolution of this case requires the court to review foreign policy and military affairs decisions. Dyncorp further argues that any such review would involve this court overseeing the actions of coordinate branches of government, which undoubtedly would evidence a lack of due respect. Dyncorp's argument fails, however, because the resolution of this case simply requires that the court determine

whether Dyncorp acted negligently or wantonly under the circumstances pertinent to the case. Such a determination does not mandate a review of any foreign policy or military decision-making. As noted earlier, the lack of military control over Dyncorp's operations results in the court avoiding such issues. Therefore, the fourth Baker factor does not apply in the present case, because the court is not required to make determinations that offend the coordinate branches of government.

Overall, this case does not satisfy any of the *Baker* factors that would thereby render it non-justiciable. Granted, Dyncorp correctly asserts that this case is not a typical car accident case. Nonetheless, the determination of whether Dyncorp acted negligently or wantonly does not require the broad, overarching foreign policy review that Dyncorp suggests. Instead, because Dyncorp's own internal policies controlled its conduct and because the United States military was not in a position of command or control over Dyncorp, the assessment of Dyncorp's alleged negligence or wantonness does not present a non-justiciable political question. Therefore, this court properly has authority to exercise its diversity jurisdiction over the subject matter.

Amending the Answer to raise the defense of lack of subject matter jurisdiction would be futile because the court does have subject matter jurisdiction and authority to exercise it. Therefore, the Motion to Amend is due to be DENIED as futile.

## V. **CONCLUSION**

For the reasons discussed above, it is hereby ORDERED that, the Motion to Amend (Doc. #27) is hereby DENIED.

Done this 12th day of December, 2006.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE