IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOHNNY POTTS and JANICE POTTS, * | |
|     PLAINTIFFS, * | |
| * | |
| v. * | 3:06-cv-00124-WHA |
| * | |
| DYNCORP INTERNATIONAL LLC, * | |
| JAMES MCCANTS, et al., * | |
|     DEFENDANTS. * | |

**PLAINTIFFS RESPONSE TO MOTION TO DISMISS FOR INSUFFICIENT
SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION BY DIFZ**

COME NOW the Plaintiffs in the above styled cause and respond to the motion to dismiss DynCorp International Free-Zone, LLC ("DIFZ) from this action on the basis of insufficiency of process and lack of personal jurisdiction as follows.

I.   SUMMARY OF ARGUMENT

DIFZ's motion to dismiss is due to be denied. Service on a foreign corporation can properly be perfected on a domestic affiliated company in the right circumstances without resort to international service procedures. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988). When this situation occurs, the service procedures of the forum state can be used even for a foreign defendant. *Id.* In Alabama, under *ARCP* 4(i)(2)(C), an action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within time to avoid a default. Accordingly, if DIFZ can be served through DI, DIFZ's motion for insufficient service of process is due to be denied.

In addition to DIFZ being a completely owned subsidiary of DynCorp International, LLC ("DI"), the relationship between DIFZ and DI is such that DIFZ is a mere conduit for

the activities of DI.  Accordingly, service on DIFZ can be perfected through proper service on DI.  *See, e.g., Greene v. Swissair Transport Co.*, 33 FRD 13 (S. D. N.Y. 1963) and *Keller v. Clark Equipment Co.*, 367 F. Supp. 1350 (D. N.D. 1973).

DIFZ is subject to personal jurisdiction in Alabama. Mr. Supina's affidavit does not contradict the plaintiffs' allegations in the complaint that DIFZ does business "by agent" in Montgomery County.  DIFZ is subject to personal jurisdiction in Alabama because through DI it regularly recruits and hires individuals, especially persons with law enforcement or military backgrounds, domiciled in Alabama for service on DI contracts overseas.  DI performs recruiting on behalf of DIFZ in Alabama.  Accordingly, personal jurisdiction exists over DIFZ in this matter.

## II. INSUFFICIENT PROCESS

### A.    Standard

The standard used in evaluating challenges to process and personal jurisdiction is well settled in this district.  "[I]n the context of a motion challenging personal jurisdiction 'in which no evidentiary hearing is held, the plaintiff must present only a prima facie showing of ... personal jurisdiction.' ...  The facts as alleged in the complaint must be taken as true to the extent they are uncontroverted by the defendants' evidence and, to the extent they are controverted, the plaintiff's version should be given greater weight, with reasonable inferences made in favor of the plaintiff." *Coblentz GMC/Freightliner, Inc. v. General Motors Corp.*, 724 F. Supp. 1364, 1367 Fn. 2 (M. D. Ala. 1989).

Both the Federal and Alabama Rules of Civil Procedure treat service of process in a

flexible manner. "Rule 4 is a flexible rule that should be liberally construed to uphold service as long as a party receive sufficient notice of the complaint." *Chan v. Society Expeditions, Inc.*, 39 F. 2d 1398, 1404 (9th. Cir. (Wash.) 1994). "[T]he term 'service of process' has a well-established technical meaning. Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). "Notice seems to be the keystone to proper service." *Spann v. Colonial Village, Inc.*, 124 F.R.D. 1, 2 (D.D.C. 1988). "An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within time to avoid a default." *ARCP* 4(i)(2)(C).

In the instant case, because the plaintiffs can make a prima facie case that DIFZ received sufficient notice of the complaint to defend it, DIFZ's motion to dismiss for improper service fails.

  **B. Applicable Service of Process Rules**

The Federal Rules of Civil Procedure provide methods of service both within and without the territorial United States for corporations. *FRCP* 4(h). *FRCP* 4(h)(2) provides the means by which a defendant may be served when that service must be accomplished "in a place not within any judicial district of the United States." DIFZ's motion focuses solely on the provisions of that rule. However, *FRCP* 4(h)(1) provides the means by which a defendant may be served when that service is done in a judicial district of the United States. 4(h)(1) allows service to be perfected "in the manner prescribed for individuals by

3

subdivision (e)(1)." *FRCP* 4(e)(1) permits service to be effected "pursuant to the law of the state in which the district court is located," in this case, Alabama. However, in Alabama, service of process cannot be considered insufficient "unless the service failed to inform the defendant of the action within time to avoid default." *ARCP* 4(i)(2)(C). In addition, both the Alabama and Federal Rules of Civil Procedure permit a corporation to be served within the United States by certified mail service upon "a managing agent." *FRCP* 4(h)(1) and *ARCP* 4(c)(6).

    **C.**    **DIFZ Can Be Served Through DI**

For a subsidiary to be able to be served through a parent, a showing must be able to be made that the two companies, while technically independent, are so interrelated on an operating level that service on one as agent for the other can be upheld. Wright & Miller, Federal Practice and Procedure: Civil 3d § 1104, p. 591. *See, e.g.*, *Leach Co. v. General Sani-Can Mfg. Corp.*, 393 F. 2d 183 (7th Cir. 1968) and *Greene v. SwissAir Transport Co.*, 33 FRD 13 (S. D. N.Y. 1963). Such a relationship can exist even though the two companies keep separate books, pay separate taxes, employ their own staff, maintain their own bank accounts and own their own property. *Id.*; also, *Keller v. Clark Equipment Co.*, 367 F. Supp. 1350 (D. N.D. 1973), *United States v. Imperial Chem. Ind.*, 100 F. Supp. 504 (S. D. N.Y. 1951). The relationship between DI and DIFZ in the instant case is just such an inextricably linked relationship.

The depositions of the corporate representatives for DI in the instant action were taken on January 17 and 19. Their testimony, along with supplemental documentary

evidence, demonstrates the interconnectedness of DI and DIFZ. There is no dispute that DIFZ is a wholly owned subsidiary of DI. (Supina Aff., Exh. A, p. 2, DIFZ's motion; Dep. Haugen, p. 7).[1] DI and DIFZ have shared common directors, in particular Paul V. Lombardi. (Supina Aff., Exh. E, ¶ 38, DIFZ's motion; Exh. A hereto, Dyncorp 2006 Annual Report to the Alabama Secretary of State; Dep. Haugen, p. 12). As a wholly owned subsidiary of DI, DIFZ operates solely on a "break-even basis" and in fact has never declared a dividend. (Dep. Haugen, pp. 17-18). DIFZ "has revenues that cover its expenses, but not a great deal more." *Id.*

The primary purpose of DIFZ is to hire "people to lease to Dyncorp International for performance of services in off-shore locations." (Dep. Haugen, p. 8). DI and DIFZ went so far as to sign a formal letter-service agreement between them, setting forth some of the terms of the leasing. (Exh. D, DIFZ's Motion.)
As Mr. Haugen further testified:

> Q. Essentially, DynCorp FZ leases its employees to DynCorp International; is that correct?
>
> A. That's correct.
>
> Q. Does Dyncorp FZ perform any other activities for Dyncorp International besides the leasing?
>
> A. No, not really. It would hire the employees, but that's not a - that's all part of the leasing.

(Dep. Haugen, pp. 13- 14).

---

[1] Excerpts from the deposition of Howard Hougen, Vice-President, Secretary and Deputy General Counsel of DI, are attached hereto as Exhibit B.

As the testimony of Pascal Budge, DI's corporate representative in the instant action on issues of hiring and training, demonstrates, DIFZ "hired" employees only in the narrowest sense possible. As Mr. Budge testified:

> Q. What does DynCorp Free Zone do with respect to its employees?
>
> A. It's really a forward deployed or forward located administrative office providing human resource financial support or financial accounting and finance support for field programs.

(Dep. Budge, pp. 30-31).[2]

Mr. Budge testified that DI was responsible for defining the qualification criteria for a certain position, for recruiting potential candidates, for screening resumes to determine that a particular candidate meets the qualifications, for interviewing candidates, for doing credit and criminal history checks of potential candidates, for performing drug screening for potential candidates and for contracting to provide pre-deployment training for candidates. (Dep. Budge, pp. 8-12, 16-22). Candidates for employment from the United States were recruited and selected as hirees by DI, even if the candidates were intended to be DIFZ employees. (Dep. Budge, p. 20). DI determined what training DIFZ employees would receive. (Dep. Budge, pp. 25-27). When DI decided to close its Southeast Asia office, it consolidated the Southeast Asia operations in the Dubai office. (Dep. Miller, p. 39)[3].

As the above evidence indicates, the relationship between DI and DIFZ is one wherein DI has complete control of DIFZ, conducting its business and creating its policies.

---

[2] Excerpts from the deposition of Pascal Budge are attached hereto as Exhibit C.

[3] Excerpts from the deposition of Henry Miller are attached hereto as Exhibit D.

Accordingly, DIFZ may be served through DI.

The Alabama case of *Ex parte Volkswagenwerk Aktiengesell Schaft*, 443 So. 2d 880 (1983) is instructive. In this Alabama case, the issue was whether the German parent corporation for Volkswagen could be served through its American subsidiary. The Alabama Supreme Court held that it was proper to serve Volkswagen through its subsidiary. In doing so, it first explained the standard under which such a claim is evaluated:

> In *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), the Supreme Court held that service of process on a proper agent of a subsidiary corporation may constitute sufficient service on the parent corporation. However, the parent-subsidiary relationship alone is not ordinarily enough to establish agency for the purpose of service of process. *Jones v. Volkswagen of America, Inc.,* 82 F.R.D. 334, 335 (E.D.Tenn.1978).
>
> The party seeking to prove proper service must at least show that the parent corporation 'exercises such control and domination over the subsidiary that it no longer has a will, mind or existence of its own, and operates merely as a department of the parent corporation.' *Professional Investors Life Ins. Co., Inc. v. Roussel,* 445 F.Supp. 687, 698 (D.Kan.1978). Alternatively, the party seeking to have service on the subsidiary and the parent may show that
>
>> [T]he parent corporation has complete control over the subsidiary, conducting its business and creating its policies ... (or the subsidiary) is a mere adjunct and instrumentality of the parent ... (or the) subsidiary corporation is merely a "dummy" by means of which the parent corporation does business in the state....
>
> *Fletcher's Cyclopedia of the Law of Private Corporations,* § 8773 at 527-528, cited in, *Stoehr v. American Honda Motor Co., Inc.,* 429 F.Supp. 763, 766 (D.Neb.1977). Hence, as the court in *Stoehr, supra,* noted, inquiry regarding the agency of a subsidiary is essentially a factual one. *Id.* at 766.

*Ex parte Volkswagenwerk Aktiengesell Schaft*, 443 So. 2d at 884.

The Alabama Supreme Court then applied this standard to the facts before it.

> Respondent has submitted overwhelming evidence of the high degree of control had by VWAG over the internal affairs of VWoA. Numerous requirements in the 'Importer Agreement' show that VWAG determines how VWoA operates on a daily basis. Although petitioner has demonstrated that VWoA hires and fires its own employees, is adequately capitalized, maintains its own bank accounts, and purchases products from other manufacturers, these factors merely indicate that the parent and subsidiary are formally structured as two separate corporations.

*Id.* at 885.

In the instant case, the relationship between DI and DIFZ is even closer than that in the Alabama VW case - DIFZ does not select its own employees, at least when those employees are recruited from the United States.

A similarly close relationship permitted a foreign subsidiary to be served by service on the parent corporation in the case of *Keller v. Clark Equipment Co.*, 367 F. Supp. 1350 (D. N.D. 1973). In the *Keller* case, Clark Equipment A.G., a Swiss corporation, was a wholly owned subsidiary of Clark Equipment Company, an American corporation with its headquarters in Buchanan, Michigan. The issue was whether service could be perfected on Clark A.G. through Clark Equipment Company. In ruling that service could be perfected on the Swiss corporation through its American parent, the North Dakota court observed the following:

> This relationship [parent and subsidiary] plus other factors may give rise to a jurisdictional basis for service. 2 Moore's Federal Practice § 4.24 [6]. One test is whether the subsidiary is a puppet of the parent. In *United States v. Imperial Chem. Ind., Ltd.*, 100 F. Supp. 504 (S. D. N. Y. 1951), the Court sustained service on a British corporation which was made by service on a wholly owned American subsidiary, saying that 'the two were so inextricably associated' that there was every reasonable assurance that notice would be actual.

*Keller v. Clark Equipment Co.*, 367 F. Supp. 1350, 1354 (D. N. D. 1973).

In the instant case, the relationship between DI and DIFZ certainly was such that every reasonable assurance existed that notice to DIFZ through DI would be actual, and such service was effective.

### D. John McMullen Can Be Considered A Managing Agent For Both DI and DIFZ

A person may qualify as a managing agent, for purposes of service of process, "if the individual is in a position of sufficient responsibility so that it is reasonable to assume that the person will transmit notice of the commencement of the action to organizational superiors." Wright & Miller, Federal Practice and Procedure: Civil 3d § 1103, p. 573. No formal appointment is necessary for a person to be a managing agent. *Id.*

Mr. McMullen certainly qualifies as a general agent with respect to DI. Currently, Mr. McMullen is DI's director for business development for law enforcement and security business unit. (Dep. McMullen, p. 8[4]). In that position, Mr. McMullen pursues law enforcement and security contracts across the federal government, including contracts that will require performance in foreign venues. (Dep. McMullen, p. 9). Prior to his assuming that position in January of 2006, Mr. McMullen was DI's Director for Homeland Security and Security Services. (Dep. McMullen, p. 8). In addition, Mr. McMullen testified as an expert witness for DI in the instant case. (Dep. McMullen, p. 7). Accordingly, service on DIFZ through Mr. McMullen as a managing agent for DI was appropriate.

---

[4] Excerpts from the deposition of Mr. McMullen are attached hereto as Exhibit E.

However, case law also indicates that Mr. McMullen's position is senior enough to permit him to be considered a managing agent of DIFZ. In the case of *Heise v. Olympus Optical Co., Ltd.*, 111 F.R.D. 1 (N. D. Ind. 1986), a similar issue arose. In *Heise*, the defendants were OOC, Ltd., a Japanese corporation, and OC/America, an organization with its principal place of business in New York. The plaintiffs sued both defendants by serving Mr. Koji Suzuki, the group manager for OC/America. One issue was whether Mr. Koji Suzuki could be considered a managing agent for OOC, Ltd. The district court concluded that the answer to that question was yes.

> OOC, Ltd. argues that Mr. Suzuki is not an officer, a managing agent, a general agent or an agent authorized by law to receive service of process upon it. Mr. Suzuki is the Group President of OC/America. Mr. Suzuki is a person whose position is one of sufficient responsibility so that it is reasonable to assume that he would transmit notices to OOC, Ltd. He is a managing or general agent within the meaning of [the Federal Rules of Civil Procedure].

*Heise*, 111 F.R.D. at 6.

Similarly, Mr. McMullen's position is one of sufficient responsibility so that it is reasonable to assume that he would transmit the summons and complaint to DIFZ. Accordingly, he can be considered a managing agent for DIFZ as well.

### E. DIFZ Was Informed of the Summons and Complaint In Time to Avoid A Default

Because service was performed on DIFZ within a judicial district of the United States, Alabama service of process rules also apply to DIFZ's service. *FRCP* 4(h)(1) and 4(e)(1). Under those rules, "[a]n action SHALL NOT be dismissed for improper service of process unless the service failed to inform the defendant of the action within time to avoid a default."

*ARCP* 4(i)(2)(C). (Emphasis added.) As the committee comments to the rule note:

> [N]ew 4(i)(2)(C) provides that no action shall be dismissed for improper service if the defendant actually received the summons and complaint in time to avoid a default.

In the instant case, DIFZ was able to file its motion to dismiss in a timely fashion. The motion includes references to the complaint within it. Accordingly, it is apparent that DIFZ actually received the summons and complaint in time to avoid a default, and the motion to dismiss for improper service is due to be denied on this ground as well.

### III.  PERSONAL JURISDICTION

**A. Standard**

A motion to dismiss a case for personal jurisdiction raises a question as to whether the controversy or defendant has sufficient contact with the forum to give the court the right to exercise judicial power over the defendant. Wright & Miller, <u>Federal Practice and Procedure</u>: Civil 3d § 1351, p. 239.

> The standard which a court uses in determining personal jurisdiction is well settled.
>
> Whether a federal court has personal jurisdiction over a defendant is a question of law and subject to *de novo* review...Where a district court does not conduct an evidentiary hearing on the question, the burden is on the Plaintiff to establish a prima facie case of personal jurisdiction over a non resident defendant...A prima facie case is established if the Plaintiff presents enough evidence to withstand a motion for directed verdict...We must accept the allegations in the complaint as true, to the extent that they are uncontroverted by the Defendant's affidavits and depositions, and must construe all reasonable inferences in favor of the Plaintiff...

*Consolidated Development Corporation v. Sherritt, Inc.*, 216 F. 3d 1286, 1291 (11th Cir. 2000). (Citations omitted.)

11

Further, "[i]n a diversity action, a federal court has personal jurisdiction over a non-resident defendant to the extent permitted by the forum state's long-arm statute." *The Nippon Credit Bank, Ltd. v. Matthews*, 291 F. 3d 738, 746 (11th Cir. (Ga.) 2002). In Alabama, "the limits of Alabama's long-arm jurisdiction are coextensive with the limits of due process." *Portera v. Winn Dixie of Montgomery, Inc.*, 996 F. Supp. 1418, 1423 (M. D. Ala. 1998), citing *Ex parte MONY Fed. Credit Union*, 668 So. 2d 552, 556 (Ala. 1995).

In the case of *Ex parte LaGrone*, 839 So. 2d 620, 624-625 (Ala. 2002)*,* the Alabama Supreme Court noted that there are two types of *in personam* jurisdiction.

The sufficiency of a party's contacts are assessed as follows:

> 'Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both 'continuous and systematic.' ... Specific contacts, which give rise to specific jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action....Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. ...'

(Citations omitted.)

In the instant case, general jurisdiction is at issue, not specific jurisdiction.

## B.    This Court Has General Jurisdiction over DIFZ through DI

As described above, the relationship between DIFZ and DI is not an independent relationship. DIFZ does not operate separately from DI, but rather exists solely to serve as a "forward deployed or forward located administrative office providing human resource financial support or financial accounting and finance support for field programs." (Dep. Budge, p. 30). When the corporate relationship between two parties is so close, personal jurisdiction on one company may be established through the other company. As the Court in *Hoffman v. United Telecommunications, Inc.*, 575 F. Supp. 1463, 1470 (D. Kan. 1983) explained, "formal separation of corporate identities [does] not create a constitutional barrier to exercising personal jurisdiction over a non-resident corporation whose affiliated corporation had a substantial nexus with the forum."

DI is definitely subject to personal jurisdiction in the state of Alabama. DI has been registered with the Secretary of State to do business in Alabama since 2001 and is still registered today. (Exh. F). DI has admitted in its answer that it does business in Montgomery County, Alabama. (DI Answer, ¶ 2). DI has a branch office in Huntsville, Alabama. (Exh. G), and may have a branch office in Daleville, Alabama as well. (Exh. H). DI's contacts with Alabama are continuous and systematic, and sufficient to establish personal jurisdiction both on behalf of itself, and on behalf of its wholly owned and controlled subsidiary, DIFZ. .

As noted above, in a personal jurisdiction inquiry, all allegations of the complaint are to be taken as true, unless controverted by the defendants. In the instant case, the plaintiffs

allege that DIFZ does business "by agent" in Montgomery County.  Mr. Supina's affidavit does not contradict that assertion.  Instead, it merely states that DIFZ "has never conducted any business in the state of Alabama" and that DIFZ "directs no activities to the State of Alabama."  (Supina Aff., ¶ 10, DIFZ Motion to Dismiss).  Mr. Supina does not contradict the plaintiffs' claim in the First Amended Complaint that DIFZ does business by agent in Alabama.   Upon information and belief, DIFZ uses DI to actively recruit and hire individuals from Alabama, as well as from other states, to perform duties for DI as DIFZ employees overseas.  Such systematic and deliberate contacts are sufficient to establish general personal jurisdiction over DIFZ by the Alabama Courts, as two Alabama cases demonstrate.

In the case of *Ex parte United Brotherhood of Carpenters and Joiners of America, AFL-CIO*, 688 So. 2d 246 (Ala. 1997), the Alabama Supreme Court held that the Alabama courts had jurisdiction over a union, even though the Alabama members of that union represented only one-half of one percent of the total membership, because the union regularly collected dues from and forwarded information to those members.   In the case of *Ex parte LaGrone*, 839 So. 2d 620 (Ala. 2002), the Alabama Supreme Court held that the direct shipment to Alabama of only 17 jacks by a Georgia corporation over a period of three years was sufficient to give the Alabama courts general jurisdiction over that corporation, when the production of the jacks was a regular part of the Georgia corporation's business.

Similarly, the regular recruitment of individuals for employment by DIFZ from Alabama, along with the other activities of DI in the forum itself, are sufficient to establish

general personal jurisdiction in this action.

## IV.  ALTERNATIVE REQUEST FOR CERTAIN JURISDICTIONAL DISCOVERY

While the plaintiffs believe that they have established a prima facie case for this Court's general jurisdiction over DIFZ, they also request that the plaintiffs be permitted to propound the interrogatories that are attached hereto as Exhibit I to the Defendants, should the Court believe that more information regarding the recruiting and hiring of Alabama citizens by DI for DIFZ is necessary before it can rule on the issue of general jurisdiction. Permission from the Court for this discovery is necessary as the deadline for discovery in the original scheduling order governing this matter has expired.

## V.  CONCLUSION

For all of the foregoing reasons, the plaintiffs respectfully request that this Court provide the following relief:

1) Deny DIFZ's Motion to Dismiss for Insufficient Service of Process; and

2) Deny DIFZ's Motion to Dismiss for Lack of Personal Jurisdiction or alternatively, if the Court deems it necessary, permit the plaintiffs to propound the discovery attached hereto as Exhibit I to the defendants.

Respectfully submitted on the 20th day of February, 2007.

**MORRIS, HAYNES & HORNSBY**

/s Larry W. Morris
  Larry W. Morris
  Attorney for Plaintiffs
  MOR007

Post Office Box 1660
Alexander City, Alabama 35011-1660
Phone: (256) 329-2000
Fax: (256) 329-2015
E-Mail: kbaker@morrishaynesandhornsby.com

**CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the foregoing in the above referenced case on the 20th day of February, 2007 by filing the same electronically with the Clerk of the Court using the CM/ECF system which will send notification of the same to all attorneys of record.


                              /s Larry W. Morris
                              Of Counsel

cc:   Mr. William Steele Holman, II
       Mr. John W. Clark
       Armbrecht Jackson LLP
       Post Office Box 290
       Mobile, Alabama 36601

       Mr. William Larkin Radney, III
       Barnes & Radney, P.C.
       Post Office Box 877
       Alexander City, Alabama 35010-0877

       Mr. Dennis R. Bailey
       Mr. R. Mac Freeman, Jr.
       Rushton, Stakely, Johnston & Garrett, P.A.
       Post Office Box 270
       Montgomery, Alabama 36101-0270