MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 1

1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE MIDDLE DISTRICT OF ALABAMA

3                  EASTERN DIVISION

4

5    JOHNNY POTTS and           )

6    JANICE POTTS,              )      ORIGINAL

7              Plaintiffs,      )

8        vs.                    )   Civil Action No.

9    DYNCORP INTERNATIONAL LLC, )   3:06-cv-00124-WHA-CSC

10   JAMES McCANTS, et al.,     )

11             Defendants.      )

12        *        *        *        *        *

13

14

15        The deposition of PASCAL BUDGE was taken

16   on Wednesday, January 17, 2007, commencing

17   at 11:00 a.m., at the offices of M.A.R. Reporting

18   Group, 200 Little Falls Street, Suite 410, Falls

19   Church, Virginia, before Terri Duncan, RPR, CCR,

20   Notary Public.

21

22        *        *        *        *        *

Exh. C

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 8

1  the police program in Kosovo?

2      A.  April of 2002.

3      Q.  Was the police program in Kosovo a United
4  Nations endeavor?

5      A.  Yes, ma'am.

6      Q.  Prior to April 2002, what did you do?

7      A.  Again, site manager for the police
8  program in Bosnia. That started in November of
9  1999.

10     Q.  At any time were you working as part of
11  the Oil-for-Food Program or as business management
12  in Iraq for DynCorp?

13     A.  No.

14     Q.  Do you know who the program manager was
15  in the Oil-for-Food Program?

16     A.  No.

17     Q.  Are you familiar with the hiring
18  practices used to hire employees for the
19  Oil-for-Food Program?

20     A.  Yes.

21     Q.  How are you familiar with that?

22     A.  They are fairly standardized procedures,

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

Page 9

1   the same kind of hiring practices that would apply
2   for other similar programs.
3        Q.   So the hiring practices used for the
4   programs with which you were associated would be
5   the same kind of hiring practices that were used
6   for the Oil-for-Food Program?
7        A.   Yes, with some variations.
8        Q.   Are you familiar with the variations that
9   were in place, if any, with the Oil-for-Food
10  Program?
11       A.   Yes.
12       Q.   What have you done, sir, to prepare for
13  this deposition today, besides anything you talked
14  to your attorney about?
15       A.   I reviewed, I think, reviewed some of the
16  practices that we've used for hiring and screening
17  individuals, and to refresh my own recollection,
18  reviewed training that was provided.
19       Q.   Training that was provided for what or
20  whom?
21       A.   Pretty much generally within the company,
22  as well as what may have been provided for

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 10

1    personal security details.

2        Q.   The training provided for personal

3    security details, was the training specific to a

4    geographic area, or would each personal security

5    detail, regardless of what part -- never mind.

6    That's too compound.

7             Did the training for personal security

8    details vary depending on the region to which they

9    were deployed?

10       A.   No.

11       Q.   All right.  Take me through the hiring

12   process, then, at DynCorp, for employees such as

13   Mr. McCants.

14       A.   Okay.  That will begin with defining the

15   requirement, of course, and in defining that

16   requirement, meaning the labor category required,

17   we'll define a qualification criteria.

18            Once that criteria is defined, then we'll

19   use a number of various methods for advertising to

20   recruit potential candidates.  We will receive

21   resumes.  And a resume will be vetted to ensure

22   the candidate satisfies the qualification

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 11

1  criteria.  Then contact will be made, and a
2  discussion will -- the initial discussion with the
3  candidate to determine --
4       Q.   Contact will be made with the applicant?
5       A.   Yes, with the potential candidate, to
6  determine if they're interested and available.
7  And if all those things are true, then the
8  candidate, we'll, in some circumstances, we'll get
9  information about some of their background to do a
10 verification or a background check.
11           Sometimes we may, depending on the
12 program, we may do a credit and criminal history
13 check.  We will also, prior to -- all of these
14 things are used to screen the candidate for the
15 particular assignment.
16           Once we determine the candidate is
17 suitable, we'll send a conditional offer of
18 employment letter and request authorization and
19 request that they submit to a drug screening.
20      Q.   And after the drug screening, if they
21 pass that, at that point, are they hired?
22      A.   It depends on the program.  In some

Page 12

1  cases, there may be a pre-deployment training.

2  And that pre-deployment training session will

3  include as part of the training an evaluation, a

4  further evaluation of the candidate. It may

5  require that they demonstrate proficiency in

6  skills, for example.

7           Once all those are satisfied, there may

8  be some other -- there may be some other

9  evaluations, again, dependent on the specific

10 contract or hiring criteria. And like I say,

11 these are general practices for normal hiring

12 procedures.

13      Q.    When a candidate goes for pre-deployment

14 training, are they at that time paid by an entity?

15      A.    Yes.

16      Q.    Who pays them for pre-deployment

17 training?

18      A.    It depends on where they're going and the

19 specifics of their assignment. It will either be

20 DynCorp International or DIFZ.

21      Q.    Is there pre-deployment training in the

22 Oil-for-Food Program?

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 16

1   in securing that contract.  It's likely that the
2   criteria was largely defined by the contract
3   itself.
4        Q.    You said the resumes were vetted.  What
5   does that mean?
6        A.    An individual at DynCorp would receive
7   the candidate resume, and whoever was assigned
8   would review that resume to ensure that the
9   candidate's experience matched the qualification
10  criteria.
11       Q.    Do you know who reviewed Mr. McCants'
12  resume in order to ensure that his experience
13  matched the qualifications for the position?
14       A.    I'm sorry.  I don't.
15       Q.    Do you know where the office -- where
16  that person would have been located?
17       A.    In that time frame, it should have been
18  Fort Worth.
19       Q.    And the person that reviewed the resume
20  would have been employed by whom?
21       A.    DynCorp International.
22       Q.    Let me backtrack a minute.  The person

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 17

1  who defines the criteria for the contract, you
2  said you did not know who that individual
3  specifically was. But do you know who that
4  individual would have been employed by?
5      A.  I don't.
6      Q.  Do you know where that individual's
7  office would have been based?
8      A.  I don't know that either.
9      Q.  Do you know who would?
10     A.  Again, it would either be the individual
11 responsible for the business development -- that's
12 where we will put together the approach and the
13 plan. So somebody in business development or --
14 who else would know -- that's probably the best
15 place, somebody in business development.
16     Q.  Do you have any way of knowing who would
17 have contacted Mr. McCants as part of the initial
18 contact with the potential candidate?
19     A.  No, I don't.
20     Q.  Do you know where that person's office
21 would have been based?
22     A.  It would have been Fort Worth.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 18

1   Q.   And would that have been a DI employee?

2   A.   Yes.

3   Q.   Do you know if, for the Oil-for-Food

4  Program, a credit and criminal history check was

5  necessary?

6   A.   I don't know if that was a requirement.

7   Q.   If it had been necessary, what office

8  would have performed that duty?

9   A.   The same recruiting office in Fort Worth.

10  Q.   Does the recruiting office in Fort Worth

11 have an official title or --

12  A.   At the time, we just called it

13 recruiting.

14  Q.   Was there somebody in charge of it during

15 the time period in which Mr. McCants was hired?

16  A.   Yes.

17  Q.   Who was that individual?

18  A.   I believe it was -- now I just lost his

19 name.  I'm sorry.  I can't remember his name.

20 He's no longer employed by DynCorp.  Oh, yes.

21  Q.   Do you know when he left?

22  A.   Michael Sousanes is his name.

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 19

1        MR. HOLMAN:  How do you spell his name?

2        THE WITNESS:  His last name is spelled

3   S-O-U-S-A-N-E-S.

4        BY MS. EADY:

5        Q.   The recruiting office was a part of

6   DynCorp International; is that correct?

7        A.   Yes.

8        Q.   And the employees at the recruiting

9   office were employees of DynCorp International; is

10  that correct?

11       A.   Yes.

12       Q.   But you have no idea what criteria they,

13  the recruiting office, used in order to identify

14  Mr. McCants as a viable candidate; is that

15  correct?

16       A.   Yes.

17       Q.   Is it all right that when we talk about

18  the FZ entity, we just call it DynCorp Free Zone

19  for shorthand?

20       A.   That's fine with me.

21       Q.   If an entity was going to be employed by

22  DynCorp Free Zone and he or she was from the

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 20

1  United States, is it fair to say that he or she
2  would have been recruited by DynCorp
3  International?
4       A.   Employees employed by DynCorp
5  International, if that's what you mean, yes.
6       Q.   No.  Like Mr. McCants.  He was
7  purportedly an employee of DynCorp Free Zone; is
8  that correct?
9       A.   Yes.
10      Q.   But he would have been recruited and
11 identified as a candidate of DynCorp
12 International; is that correct?
13      A.   Yes.
14      Q.   Are you familiar with the various forms
15 of advertisements used to help locate candidates
16 for DynCorp positions?
17      A.   I know some of them that we used.  But
18 I'm not sure I'm familiar with all of them.
19      Q.   Can you tell me, just list some of the
20 ones that were used by you at the time that
21 Mr. McCants was hired?
22      A.   We have our own recruiting website.  I

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 21

1  was aware that we did some internet postings and
2  things like Monsterjobs.com or just very
3  mainstream internet postings.
4           On occasion, we might use other media
5  like newspaper articles or, you know, want ads or
6  that kind of thing.  We've posted, on occasion, in
7  trade journals.  We also do -- what do you call
8  those things -- we'll send a business development
9  team or a representative team to conferences.
10     Q.   What about something called Blueline.com;
11  is that something you're familiar with?
12     A.   No, I'm not.
13          MR. HOLMAN:  Did you say Blueline?
14          MS. EADY:  B-L-U-E-L-I-N-E.
15          THE WITNESS:  I'm not familiar.
16          BY MS. EADY:
17     Q.   Was it the recruiting office in Irving,
18  Texas, that would place these various ads?
19          MR. HOLMAN:  I don't think he said it was
20  in Irving.
21          MS. EADY:  I'm sorry.  In Texas.
22          THE WITNESS:  Yes, it was the recruiting

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 22

1   office that placed those ads.
2           BY MS. EADY:
3       Q.  Who would have conducted pre-deployment
4   training of a candidate for a candidate that would
5   have been hired in December of 2003?
6       A.  Let me make sure. I think you said who
7   would have conducted pre-deployment training? Is
8   that right?
9       Q.  Yes. Yes.
10      A.  That would have been the Crucible.
11      Q.  Who did the Crucible have an agreement
12  with for conducting pre-deployment training?
13      A.  DynCorp International.
14          MS. EADY: Ms. Duncan, if you could
15  please hand Mr. Budge what is marked or will be
16  marked as Exhibit G.
17          BY MS. EADY:
18      Q.  Mr. Budge, if you would just take a
19  minute to look that over.
20      A.  (Reviewing document). Okay.
21      Q.  In the course of your duties as a program
22  manager, have you ever had occasion to review the

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 25

1  Q. Do you know what training Crucible would
2  have provided for the Iraq Oil-for-Food Program?
3  A. I don't know of any specific training for
4  that program. But I do know the policy was for us
5  to provide pre-deployment training for anyone
6  going to Iraq.
7  Q. Did Crucible provide any other types of
8  training besides pre-deployment training?
9  A. Yes.
10 Q. What kinds of training was that?
11 A. They would -- they had mobile training
12 teams that would provide training in Iraq or other
13 areas, Afghanistan, other places that may have
14 been required based on a number of factors.
15 Q. The contract for Crucible to provide
16 training, was it between DynCorp -- I'm sorry --
17 was it with DynCorp International or DynCorp Free
18 Zone?
19 A. DynCorp International.
20 Q. And who would have negotiated with
21 Crucible to establish the requirements for the
22 contract, DynCorp Free Zone or DynCorp

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 26

1    International?

2        A.    DynCorp International.

3        Q.    So if there are types of training that

4    are omitted from the subcontract with Crucible,

5    DynCorp International would have been the entity

6    to decide that that training did not need to be

7    included; is that correct?

8              MR. HOLMAN:  Object to the form of the

9    question.

10             Go ahead and answer.

11             THE WITNESS:  I'm not sure I understood

12   your question.  I'm sorry.

13             BY MS. EADY:

14       Q.    DynCorp International would have

15   negotiated with Crucible to set out the contract

16   specifications for training, correct?

17       A.    Yes.

18       Q.    If they chose to leave certain types of

19   training out of the contract, that would have been

20   an agreement between DynCorp International and

21   Crucible; is that correct?

22       A.    Yes.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 27

1    Q.   DynCorp Free Zone did not contract with
2  Crucible to provide training of any kind?
3    A.   Not that I know of.
4    Q.   Do you know if Crucible provided DynCorp
5  International or DynCorp Free Zone with any
6  evaluations of Mr. McCants' performance during his
7  training?
8    A.   I don't know that.
9    Q.   Would it be customary for such
10 evaluations to be provided to either DynCorp
11 International or DynCorp Free Zone?
12   A.   Yes.
13   Q.   And that would have been the evaluations
14 that take place as part of pre-deployment?
15   A.   Yes, ma'am.
16   Q.   Are those done in writing or are they
17 done orally?
18   A.   Both.
19   Q.   In terms of both, is it both per employee
20 or is it just some employees' evaluations are done
21 orally and some evaluations are done in writing?
22   A.   Again, dependent on the specific

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 1

1              IN THE UNITED STATES DISTRICT COURT
2                 MIDDLE DISTRICT OF ALABAMA
3                      EASTERN DIVISION
4   JOHNNY POTTS AND JANICE          *
5   POTTS,                           *        ORIGINAL
6              Plaintiffs,           *
7   VS.                              *   CIVIL ACTION NO.
8   DYNCORP INTERNATIONAL, LLC,      *   3:06-cv-00124-WHA-CSC
9   JAMES McCANTS, et al,            *
10             Defendants.           *
11
12
13                    ORAL DEPOSITION OF
14                    HENRY S. MILLER, JR.
15                    JANUARY 19, 2007
16
17
18        ANSWERS AND DEPOSITION OF HENRY S. MILLER,
19   JR., produced as a witness at the instance of the
20   Plaintiffs, taken in the above-styled and numbered
21   cause on January 19, 2007, before Kathy K. Elliott,
22   Certified Shorthand Reporter in and for the State of
23   Texas, at Whitlock Group, 6005 Commerce Drive,
24   Suite 320, Irving, Texas, in accordance with the
25   Federal Rules of Civil Procedure.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

Exh. D

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 39

1    A.   It was a changing relationship and I'm not
2  sure I can define it clearly, but I'll simply offer
3  that when the war -- when our work started in Iraq in
4  2003, we had a Middle East office in Kuwait City.  The
5  senior corporate representative in that office was Mark
6  Hannick.  He was our vice president for Middle East
7  operations.
8    Q.   Okay.
9    A.   And he initially had support
10 responsibilities, obviously because of his location, in
11 assisting and establishing operations in Iraq for
12 programs like the police program.  And as I understood
13 it for the period -- and I know for sure during the
14 period that I was there the first time, came to Baghdad
15 two or three times as part of his responsibilities.
16 And I'm told he did the same thing through the end of
17 that year.
18         Now that organization was changing over
19 time.  The whole company was restructuring over time.
20 We had, as an example, a Southeast Asia office that we
21 closed and consolidated those operations in Dubai so...
22    Q.   Was Mr. Hannick still in the Middle East when
23 you were in Iraq in 2004?
24    A.   He was.
25    Q.   What office was he at then?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO